RICHFIELD *v.* MICHIGAN CENTRAL RAILROAD CO.

CONTRIBUTORY NEGLIGENCE — CHOICE OF HAZARDS — RAILROAD
     CROSSINGS.

> The rule which excuses one for acts which, under ordinary circumstances, would constitute contributory negligence, where they were committed in a sudden emergency in an effort to escape from imminent peril, does not apply where the perilous position was due to the negligence of the person committing such acts. So *held* where plaintiff's intestate was killed in an attempt to cross a railroad track in front of a train, the approach of which, by the exercise of due care, she would have discovered before her situation became perilous.

Error to Calhoun; Smith, J.   Submitted June 9, 1896.
Decided July 28, 1896.

Case by Charles Richfield, administrator of the estate
of Emma J. Richfield, deceased, against the Michigan
Central Railroad Company, to recover damages for the
death of his intestate, alleged to have been caused by
defendant's negligence.   From a judgment for plaintiff,
defendant brings error.   Reversed.

*Hulbert & Mechem,* for appellant.

*John C. Patterson* (*P. T. Colgrove,* of counsel), for
appellee.

LONG, C. J.   This action is brought by the administrator to recover damages for the alleged negligent killing of
Emma J. Richfield.   The plaintiff's intestate, on March
3, 1894, was riding in a carriage with a Mrs. McCuen.
The horse and carriage were owned by Mrs. McCuen,
and she was driving.   The carriage was a single one,
without a top.   They had been driving for some time
about the streets of Battle Creek, and finally turned into

West Main street, and drove along that street, cross-
ing the bridge over Battle Creek river, and turned into
Tompkins street.    Defendant's railroad track crosses
Tompkins street about 71 feet distant from West Main
street.    As the women were about half way from West
Main street to the railroad crossing, as claimed by the
plaintiff, the train on defendant's road came from the
west at a high rate of speed, the witnesses putting it
from 40 to 60 miles an hour.    The horse had been driven
on a trot across this bridge, and up to within 30 or 40 feet
of the railway crossing, when the women discovered the
train approaching the crossing.    No attempt was made
to stop the horse, but, instead, they increased its speed,
and attempted to cross the track before the approach
of the train.    The horse crossed uninjured, but the en-
gine struck the carriage between the wheels, throwing the
women out, and killing plaintiff's intestate, and injuring
Mrs. McCuen so that she died on the next day.

On the trial in the court below, the question of defend-
ant's negligence was fully and fairly submitted to the
jury, and no question is raised in this court upon that
branch of the case; but it is insisted by counsel for de-
fendant that, under the facts shown, it was the duty of
the court to take the case from the jury, upon the ground
of the contributory negligence of Mrs. McCuen, the driver
of the horse, and of Mrs. Richfield.    While the record is
quite voluminous, many witnesses having been examined
in the case, the facts are few which need be discussed.
It is shown by plaintiff's own witnesses that the two
women drove along these highways, and approached
within a few feet of this railroad crossing, without giving
any attention to the railroad track or the approach of a
train; and, when the train was from 200 to 500 feet dis-
tant, it was seen by them, and they at once urged their
horse forward, with the purpose of crossing in front of
the train.    Counsel for plaintiff contend that this was
not such negligence upon the part of these women as
should preclude a recovery, for the reason that their view

was obstructed until they had nearly approached the entrance upon Tompkins street, by buildings and other obstructions, which rendered it practically impossible for them to see or hear the train until it was within about 500 feet of this crossing; and, again, that, at the point where they first discovered the train, there were obstructions upon the side of Tompkins street, which made it impossible for the horse and carriage to safely turn around, and that, had the engineer been on the lookout, he could have discovered them when nearly 500 feet away, slowed down his engine, and made it possible for them to cross safely in advance of the train.

The accident happened about 3 o'clock in the afternoon, and the engineer testified that he did not see the women until within about 165 feet of them. The train was the Boston special, one of defendant's rapid trains. Both women were residents of Battle Creek, and were familiar with the streets, accustomed to riding about them, and presumably knew that Tompkins street led across defendant's track. There was every indication there that it was a railroad crossing, and their horse, according to the testimony of plaintiff's witnesses, was manageable. The testimony shows that, while they were crossing the bridge, they were laughing and talking, giving no attention to their surroundings. They passed several parties before reaching the bridge, who were called as witnesses, and testified that they heard the train before the women reached the bridge, and saw the train as they were on or just crossing it. There are gates on West Main street, some 500 feet distant from where Tompkins street leads into it; and some of the witnesses testified that, before these women turned off of West Main street into Tompkins street, these gates were let down; and all witnesses, both of plaintiff and defendant, testified that they heard the noise of the train before it came into West Main street, or saw it before it reached Tompkins street, or heard the engine bell or whistle, or heard the bell on the gates, or saw the gates were down

before the train had crossed West Main street; but, apparently, the women saw or heard nothing until within 30 or 40 feet of the crossing. As they reached that point, a man standing upon the bridge, seeing the approaching train, shouted to them to "look out there," or "hold on there," and then, for the first time, they appeared to realize their danger. This witness says that the train was then about 213 feet from the Tompkins street crossing. There is no claim by the plaintiff that the horse was beyond control.

The court charged the jury upon this question as follows:

"If you find as facts that the plaintiff's intestate and her driver could not safely stop their horse or safely turn around at the time the train came in sight and they were apprised of the danger, and that they were not negligent in being where they were, and that they exercised ordinary care and reasonable diligence under the circumstances in attempting to cross the track and thereby escape injury, it would not be such negligence on their part as to prevent recovery in this suit. * * * If you find that the ladies approached this crossing with ordinary and reasonable care and caution at the time in question, and that they exercised ordinary care and prudence in attempting to avoid the accident, they were not guilty of contributory negligence in the premises. The plaintiff's intestate is not chargeable with contributory negligence if she was injured in an effort to escape from imminent peril primarily caused by defendant's neglect. Often acts in sudden emergencies and unexpected peril do not amount to contributory negligence which would be contributory negligence under other circumstances. The law makes allowance for fright and mistakes made in emergencies created by the defendant without the fault of the intestate, and you will determine the question from all the facts and circumstances of the case as disclosed by the evidence. * * * If you find that these ladies had an uninterrupted view of the track and train approaching, and the distance of the train from the crossing, as well as their own distance from the track in crossing, were such as, under all the circumstances of the case, would justify a reasonable person in the belief that, by the use of ordi-

nary care and prudence, the crossing could be made, and the defendant did not approach the crossing with its train under control, but in a reckless manner, and did not use care in slackening the speed of the train when the danger was seen, and the ladies were without fault or negligence on their part, then defendant would be guilty, and the plaintiff should have verdict.    *    *    *"

We think the facts in the case did not warrant this charge. But counsel for plaintiff contend that the women were suddenly frightened, being put in a place of deadly peril, which was caused by the defendant's negligence; that their only hope of safety was to cross the track; that the law makes allowance for persons in such a crisis, and will not hold them guilty of such negligence as to defeat the action if they do not select the very wisest course; and that a mistake of judgment under such circumstances would not constitute contributory negligence. We think this proposition would have been well stated if these women had been put in a place of peril by the defendant's negligence, as in the case of *Chicago, etc., R. Co.* v. *Miller*, 46 Mich. 532. There the plaintiff, when within a few rods of the track, stopped his team, and listened, and, as he approached the track, exercised due care. The highway was narrow, on account of the grade. Not hearing a train approaching, he drove forward, though his view was obstructed down the track by the high embankment along the roadside. When within about two rods of the track, he saw an approaching train, and whipped up his horses, and attempted to make the crossing. He was struck, and severely injured. That case was affirmed in this court, for the reason that the plaintiff had exercised due care and caution in approaching the track, and that it was not his fault that he was placed in a position of danger, but the fault of the defendant company in failing to ring its bell or sound the whistle. It was shown that the first warning the plaintiff had of the approach of the train was when he was within about two rods of the crossing, upon a narrow highway, and the railroad

track extending diagonally across the highway; and it was further shown that he was driving a pair of spirited colts, which he claimed would not stand at the approach of a train, and, by whirling around, he would have been precipitated on the track in front of the engine. The rule was settled in that case that where, by the negligence of the defendant, the plaintiff was put in a place of danger, and if, in an attempt to extricate himself from it, he did not take the best hazard, he would not be charged with contributory negligence. This, as we understand it, is as far as the rule extends. In the present case, however, there is not a particle of showing that the women exercised the least care in approaching this crossing. They were familiar with the streets and the crossing, and yet drove along, laughing and talking, and apparently giving no heed to the approach of a train. If they had been exercising any care, they would have heard or seen what others saw and heard. They were not drawn into a position of peril by the negligence of the defendant, but, by their own negligence, had placed themselves in such a position, and, being there, took their chance of crossing in front of the train. We think the court should have directed a verdict in favor of the defendant.

The judgment below will be reversed, and no new trial ordered.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.