## WABASH RAILROAD COMPANY v. KEISTER, ADMINISTRATOR.

163  609
f171  172

[No. 20,008.   Filed May 26, 1903.   Rehearing denied December 8, 1904.]

TRIAL.—*Special Answers.*—*Motion for Judgment Non Obstante.*—Where the jury render a general verdict, a judgment on the answers to the special interrogatories will not be sustained unless such special answers and the general verdict are in irreconcilable conflict.   *p. 611.*

RAILROADS.—*Death by Wrongful Act.*—*Contributory Negligence.*—Where, in an action by an administrator for damages for the death of his decedent, alleged to be caused by the wrongful act of defendant, the answers to the special interrogatories show: the decedent was mortally injured on a railway crossing; the highway crossed the railway at nearly right angles; on the far side of the crossing was a sign, "Railroad Crossing," on a post nine feet higher than the track and visible 276 feet and could be read sixty to seventy-five feet distant; the train was coming from the southwest on a track straight for 1100 to 1200 feet with no trees or obstructions on the side from which decedent was approaching on its right of way, but a grove of trees lay north of its right of way, between it and the highway; the highway, eighty feet before it intersected the railway, was on a level with the railway; the weeds on the railroad had not been cut, but this did not obscure the vision; the train was running thirty miles an hour; the smokestack was fifteen and one-half feet above the level of track; the engine was under a full head of steam; smoke was not emitted many feet above the stack; deceased was riding on a spring seat in an empty wagon drawn by two gentle, easily managed horses; his level of vision was nine feet above the railway track; deceased was twenty-one or twenty-two years old, of ordinary intelligence, good health, ordinary physical strength, good eyes, able to read, and was accustomed to handling horses; for five months he had lived within two miles of this crossing; he could have seen the railroad track for sixty to seventy-five feet distant from it; when forty-five feet from the track and from thence all the way to the track, he could have seen the train coming by carefully looking; when he was forty-five, thirty-five and twenty-five feet from the track, the train was four hundred and fifty, three

hundred and fifty and two hundred and fifty feet, respectively, from the crossing. He was seen by the fireman, who immediately told the engineer, who applied the air brakes, gave the danger signals, and did all he could to stop the train; when eighteen feet from the track, decedent saw the train and whipped his horses to cross; the engine struck the wagon; deceased died the next day; the weather was clear—slight wind: that there was no evidence of his crossing at this place before; nor that he looked or listened for a train except when eighteen feet from the track; the engineer gave no signal for the crossing by sounding the whistle or ringing the bell; and that there was no evidence that deceased could have heard the sounding of the whistle or ringing of the bell, such answers show clearly that the deceased was guilty of contributory negligence. *pp. 611–615.*

RAILROADS.—*Contributory Negligence.—Burden of Proof.*—Section 359a Burns 1901 (Acts 1899, p. 58) does not alter the degree of care to be used by a traveler in crossing a railway, or excuse or relieve a plaintiff from the consequences of contributory negligence. *p. 615.*

TRIAL.—*Answer to Interrogatory.—Conclusion.*—The answer "yes" to the interrogatory "considering all the circumstances and surroundings at the time and place, did the deceased exercise ordinary care and discretion in endeavoring to proceed over the crossing after discovering the train?" is a mere conclusion, and must be disregarded. *p. 615.*

RAILROADS.—*Crossings.—Contributory Negligence.—Extrication from Danger.*—Where a traveler at a railway crossing places himself in a position of peril through his own negligence, no amount of care exercised thereafter will entitle him to recover, if his negligence resulted in the injury. *p. 616.*

From Warren Circuit Court; *Joseph M. Rabb*, Judge.

Action by George Keister, administrator of the estate of Charles R. Keister, deceased, against the Wabash Railroad Company for damages for the death of said intestate. From a judgment entered on a verdict for plaintiff for $3,000, the defendant appeals. Transferred from the Appellate Court under § 1337u Burns 1901. *Reversed.*

*E. P. Hammond, W. V. Stuart, D. W. Simms, James McCabe* and *E. F. McCabe*, for appellant.

*C. V. McAdams* and *Fred C. Rabb*, for appellee.

MONKS, C. J.—This was an action brought by the appellee, as the administrator of the estate of Charles R. Keister, deceased, to recover damages for the death of his decedent, resulting from the alleged negligence of the ap-

pellant in running one of its passenger-trains against the deceased at a highway crossing. The appellant's demurrer for want of facts was sustained to the first paragraph of the complaint, but overruled as to the second and third paragraphs thereof. The appellant answered in general denial of the complaint. The cause was tried by a jury, and a general verdict returned in favor of the appellee. With the general verdict were returned answers to interrogatories submitted by the court at the request of the parties. Over the appellant's motion for judgment on the answers of the jury to the interrogatories, notwithstanding the general verdict, the court rendered judgment on the general verdict.

The only error assigned and not waived calls in question the action of the court in overruling-said motion for judgment on the answers to the interrogatories.

The general verdict determined each and every question essential to appellee's right of recovery in favor of the appellee, and every reasonable presumption will be indulged in its favor. Nothing will be presumed in aid of the answers to the interrogatories. If, however, the facts found in answer to the interrogatories are in irreconcilable conflict with the general verdict, the court erred in overruling appellant's motion for a judgment in its favor on the answers to the interrogatories, nothwithstanding the general verdict. *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 495.

Appellant insists that the answers to the interrogatories show (1) that the deceased was guilty of contributory negligence, and (2) that appellant's alleged negligence was not the cause of the injury. If either of said contentions is correct, the court erred in overruling said motion, and the judgment must be reversed.

Upon the question of the contributory negligence of the deceased, the findings of the jury disclose the following: At the crossing where the deceased was injured, and for

some distance therefrom each way, appellant's railroad ran in a northeasterly and southwesterly direction. The highway, on which the deceased was traveling at the time of the accident, as it approached the railroad from the northwest, ran in a southeasterly direction, and at a point about eighty feet from the track made a slight turn to the right, so as to cross the railroad track nearly at right angles. Appellant had erected at the south side of the crossing a sign board, having thereon the words "Railroad Crossing," said sign being on a post nine feet higher than the level of the railroad track and visible to the deceased for a distance of 276 feet, and the words thereon could have been read by him at a distance of sixty to seventy-five feet from the railroad track. From 1,100 to 1,200 feet southwest of said crossing, being the direction from which the train which struck the deceased approached said crossing, appellant's track was on a straight line, without any trees or buildings on the right of way north of the track; but north of said right of way, and west of said highway, there was a grove. The highway approaching the track from the north, the direction from which the deceased came, was, for a distance of about eighty feet, substantially on a level with the railroad track. The grass and weeds on appellant's right of way had not been cut at the time of the accident, but the findings show that this did not prevent the deceased from seeing the approaching train in time to avoid the injury which resulted in his death. The train that struck the deceased consisted of an engine, tender, and four coaches, and was running in a northeasterly direction, at about thirty miles an hour; the deceased was traveling at about three or four miles an hour. The engine and tender weighed about 213,320 pounds; the height of the smoke-stack of said engine was about fifteen and one-half feet above the level of the track. Said engine, as it approached said crossing, ran with a full head of steam, until the steam was shut off just before reaching the crossing;

but while so running smoke was not emitted from said engine in the air many feet above the top of the smoke-stack. The deceased was riding along said highway in an empty wagon, drawn by two horses, sitting on a spring seat, and while so seated his eyes were about nine feet above the level of the highway; said horses were gentle and easily managed, and the deceased was accustomed to driving and working with them. He was a man twenty-one or twenty-two years of age, of ordinary intelligence, in good health, of ordinary physical strength, had good eyesight, could read, and was accustomed to handling horses. He had always resided in Warren county, Indiana, where said injury occurred, and for five months before the accident had resided about two miles from said crossing. As he approached said railroad crossing, he could, on coming within sixty or seventy-five feet of the track, by looking, have seen that he was approaching a railroad track. As the deceased approached said railroad crossing, on coming to a point forty-five feet from the railroad track, and thence all the way to said track, he could, by carefully looking, have seen said train as it approached said crossing. When the deceased was forty-five feet from the railroad track the train that struck him was 450 feet from the crossing. When he was thirty-five feet from said crossing said train was 350 feet from it, and when he was twenty-five feet from said crossing said train was 250 feet from it. The deceased was seen by the fireman of the approaching train, who at once gave warning to the engineer, and said engineer immediately on receiving such warning applied the emergency brakes, gave the danger signals, and used his best efforts to bring said train to a stop before striking the deceased. Before driving upon the railroad track, and when about eighteen feet from the track, the deceased saw the train, and, seeing it, urged the horses he was driving forward, to get over the track before the arrival of the train, but in so doing the wagon in which he

was riding was struck by the engine, and he received injuries from which, on the following day, he died. Said accident occurred at about 2 o'clock p. m. one day in August, 1900. The weather at the time was clear, and there was but little wind. There was no evidence that the deceased had ever passed over the crossing before the accident occurred. There was no evidence that the deceased, before driving upon the railroad track, looked or listened for a train, except when he was eighteen feet from the track, as above stated. Appellant did not give the signal for said crossing by ringing the bell and sounding the whistle, as required by statute; but the jury found that there was no evidence that the deceased could have heard the ringing of the bell or sounding of the whistle if the said bell had been rung and whistle sounded for said crossing, as required by statute. The answers of the jury to the interrogatories show that if the deceased had looked in the direction from which the train was coming, at any time after he reached a point forty-five feet from the railroad track, he could have seen said train, or some part thereof. His view in said direction, after coming to said point until he reached the track, was unobstructed for a distance of 1,100 feet. It will be observed that the answers to the interrogatories show that as soon as appellant's servants discovered that the deceased was approaching the crossing, they used their best efforts to stop the train and avoid injuring him.

In *Pittsburgh, etc., R. Co.* v. *Fraze* (1898), 150 Ind. 576, 579, this court said: "It is also thoroughly established law in this State that, 'in attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. * * * If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by a collision, either that he did not look, or, if he did look, that he did not heed what he saw.' *Mann* v. *Belt R., etc., Co.* [1890], 128 Ind. 138; *Lake*

*Erie, etc., R. Co.* v. *Stick* [1895], 143 Ind. 449. It is also established that the law will assume that such person 'actually saw what he could have seen, if he had looked, and heard what he could have heard, if he had listened.' *Cones* v. *Cincinnati, etc., R. Co.* [1887], 114 Ind. 328; *Lake Erie, etc., R. Co.* v. *Stick, supra."* See, also, *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 498, 499, and cases cited; *Chicago, etc., R. Co.* v. *Thomas* (1900), 155 Ind. 634-640; *Chicago, etc., R. Co.* v. *Reed* (1902), 29 Ind. App. 94. It is clear that the deceased was guilty of negligence proximately contributing to the injury that resulted in his death.

Nor does §359a Burns 1901, relating to the burden of proof as to contributory negligence in cases such as this, alter the rule just stated. In *Malott* v. *Hawkins* (1902), 159 Ind. 127, this court said: "This statute can not be held to abate the legal requirements as to the care that a traveler crossing a railroad track must use, and it does not change the rule that it is presumed that the traveler saw and heard, or was heedless of, that which, as an ordinarily prudent man, he ought to have taken notice of." In *Southern Ind. R. Co.* v. *Peyton* (1902), 157 Ind. 690, 693, it was held that said statute "does not in any manner excuse or relieve the plaintiff from the consequences of contributory negligence long recognized by the law, nor make the presence of concurrent fault less effective to the defendant in escaping liability."

The answer "yes," to the interrogatory, "considering all the circumstances and surroundings at the time and place, did the deceased exercise ordinary care and discretion in endeavoring to proceed over the crossing after discovering the approaching train?" is the statement of a conclusion, and can avail the appellee nothing in view of the answers of facts set out, and must be disregarded. But if the deceased was placed in a perilous position, he was so placed by his own negligence; and even if, after discovering his

perilous situation, he exercised ordinary care under that set of circumstances, as his own negligence brought him into such a situation, no amount of care thereafter used, if his own negligence resulted in the injury, would entitle appellee to recover in this action. Elliott, Railroads, §1173; Shearman & Redfield, Negligence (5th ed.), §89, p. 133, and note 7; *Richfield* v. *Michigan Cent. R. Co.* (1896), 110 Mich. 406, 68 N. W. 218; *Liermann* v. *Chicago, etc., R. Co.* (1892), 82 Wis. 286, 52 N. W. 91, 33 Am. St. 37.

In *Baltzer* v. *Chicago, etc., R. Co.* (1892), 83 Wis. 459, 53 N. W. 885, the court considered the action of the lower court in giving an instruction announcing the rule of law for which, in this case, the appellee is contending. At page 474, Pinney, J., speaking for the court, said; "The instruction, as applied to the facts of this case, would leave the jury to conclude that if the plaintiff, in the emergency in which he found himself, chose the best means of escape that occurred to him, although not the best calculated in that particular exigency, this fact might exculpate and relieve him from the consequences of his contributory negligence, if they found that he had been guilty of such, by which he was brought into such a dangerous position. This instruction was misleading and erroneous." So, in *Briscoe* v. *Southern R. Co.* (1897), 103 Ga. 224, 28 S. E. 638, where the plaintiff had negligently brought himself into a perilous situation, and, being injured while exercising what seemed to him the best means of extricating himself from such a situation, sought to charge the defendant railway company for his injuries so received, the supreme court of Georgia said: "He ought not to be permitted to do a thing which deprived him of that presence of mind requisite to his preservation and safety, and then allege that, for want of such presence of mind, another, not responsible for it, should be made to suffer."

It is said in Elliott, Railroads, §1173: "Where the sud-

den peril is attributable to the negligence of the plaintiff he can not successfully assert that he is absolved from the duty to exercise due care.  If the plaintiff voluntarily goes into a place of danger without exercising the care required by law, he is guilty of negligence although after so getting into the place of danger he exercises his judgment to the best of his ability, to escape from the danger.  Care is required to keep out of danger as well as to avoid it after getting into it, and the rule that sudden peril excuses does not govern where the plaintiff without exercising due care goes into a place of danger, such as a railroad crossing is, and of which danger the track itself is a warning."

As this cause must be reversed for the reasons given, it is not necessary to consider appellant's second contention.

Judgment reversed, with instructions to sustain appellant's motion for a judgment in its favor on the answers to the interrogatories, notwithstanding the general verdict.