## WINONA AND WARSAW RAILWAY COMPANY v. ROUSSEAU.

[No. 6,848. Filed November 29, 1910. Rehearing denied February 14, 1911. Transfer denied June 28, 1911.]

1. NEGLIGENCE.—*Contributory.*—*Negativing Complaint.*—It is not necessary, in a complaint for personal injuries, to negative contributory negligence. p. 250.

2. CARRIERS.—*Passengers.*—*Sudden Start of Cars.*—*Complaint.*—*Inferences.*—Where a complaint shows the relation of passenger and carrier between plaintiff and defendant, the duties of the carrier need not be set out, since the law fixes them; and an allegation that the defendant violently started its car, thereby throwing the plaintiff therefrom, sufficiently states a cause of action. pp. 250, 252.

3. CARRIERS.—*Passengers.*—*Sudden Start of Car.*—*Contributory Negligence.*—*Complaint.*—A complaint showing that the plaintiff was guilty of contributory negligence is bad on demurrer; but a complaint alleging that the plaintiff arose, preparatory to alighting from the car, and that the car started with a violent jerk, thereby throwing her therefrom, does not show contributory negligence. p. 252.

4. CARRIERS.—*Passengers.*—*Standing in Car.*—Where a passenger is known to be standing in a car, regardless of the reason therefor, it is the duty of the persons in charge of the car to operate it in such a manner as not to throw such passenger therefrom. p. 252.

5. CARRIERS.—*Passengers.*—*Standing in Car.*—*Contributory Negligence.*—It does not constitute contributory negligence, as a matter of law, for a passenger to stand on a moving car. p. 252.

6. CARRIERS.—*Care Toward Passengers.*—While it is not the customary duty of a motorman to look after the passengers on his

car, it is his duty to exercise the highest practicable degree of care in the operation of his car; and this may require him to see whether passengers are in a position of safety. pp. 252, 258.

7. DAMAGES.—*Excessive.*—*Interurban Railroads.*—Where a verdict is not so large as to indicate that the jury acted from prejudice, partiality or corruption, it will not be disturbed on appeal. p. 253.

8. APPEAL.—*Briefs.*—*Waiver.*—Points not argued are waived. p. 253.

9. CARRIERS.—*Stations.*—*Passengers.*—*Complaint.*—A complaint by a passenger of an interurban railway company, alleging that she arose in the car preparatory to alighting, that a signal to stop had been given, that the motorman negligently gave the car a sudden jerk, thereby throwing plaintiff from the car, but failing to allege that the place where she was attempting to alight was at a usual stopping place, is sufficient. p. 253.

10. CARRIERS.—*Passengers.*—*Sudden Start of Car.*—*Signal by Stranger.*—*Proximate Cause.*—*Jury.*—In an action by a passenger against an interurban railway company for negligently and suddenly starting the car with a jerk, thereby throwing her therefrom, the alleged fact that a stranger gave the signal for the motorman to proceed, is not conclusive that the proximate cause of the injury received was the giving of such signal and not the alleged negligence in starting the car with a jerk, the question being for the jury; and an instruction that on proof of such alleged fact the plaintiff could not recover, was correctly refused. pp. 255, 259, 260.

11. NEGLIGENCE.—*Evidence.*—*Inferences.*—*Appeal.*—In a negligence case, evidence of facts from which an inference of defendant's negligence arises, is sufficient to sustain a verdict, on appeal. p. 259.

12. TRIAL.—*Verdict.*—*Inferences.*—*Appeal.*—On appeal, all reasonable inferences are drawn in favor of the general verdict. p. 260.

13. TRIAL.—*Verdict.*—*Interrogatories.*—*Conflict.*—The general verdict controls the answers to the interrogatories to the jury unless they are in irreconcilable conflict therewith. p. 261.

From Elkhart Superior Court; *V. W. VanFleet*, Judge.

Action by Mary Rousseau against the Winona and Warsaw Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Frazer, Cook & Frazer* and *Widaman & Widaman,* for appellant.

*Levi R. Stookey, T. Wayne Anglin* and *James M. Van-Fleet,* for appellee.

WATSON, J.—The complaint in this cause is in three paragraphs. The first alleges substantially the following facts: That the Winona and Warsaw Railway Company was on August 15, 1906, a common carrier of passengers for hire; that it propelled its cars by means of electricity upon a street railway in the city of Warsaw, Kosciusko county; that on said day plaintiff took passage on one of said cars, and paid to defendant her fare as a passenger; that said car was an open one, and was in charge of a motorman and a conductor; that there was an unobstructed view of the passengers from all parts of the car; that plaintiff desired to alight from said car at the intersection of Center and Lake streets; that said car was proceeding west on Center street, and, without stopping at said intersection, proceeded south on said Lake street; that, as it thus proceeded, plaintiff heard some of the passengers call to the conductor to stop the car, and she also heard the bell ring as a signal for said motorman to stop the car; that the motorman heard said signal, and at once, in obedience thereto, began to decrease the speed of said car, which was brought almost to a stop; that plaintiff believed that said car was about to stop in obedience to said signal, and, acting upon that belief, she arose from her seat in order to alight as soon as said car should stop; that the motorman, if he had looked, or had used reasonable care and diligence in the discharge of his duties, could have seen that plaintiff was standing, preparatory to alighting from the car, and at a place from which she might be thrown from the car; that said motorman, without giving any notice or warning, then and there carelessly and negligently so applied power to said car as to cause it to move forward with a sudden jerk, and on account of said negligence of said motorman this plaintiff was thrown from said car and caused to fall upon the street, by reason of which she was greatly bruised, injured, etc.

The second paragraph alleges, in addition to the averments of the first, that the bell was rung by some person unknown to plaintiff; that she heard the bell, and understood it to be a signal to stop said car, and supposed and believed that it had been given by the conductor; that the conductor heard said signal to stop said car, and could have countermanded said signal if he had not wished to stop at said place; that he negligently failed to countermand said signal to stop, and thereby ratified and adopted it as his own.

The third paragraph alleged, in addition to the allegation of both the first and second paragraphs, that if the motorman had looked back of him through the car he could have seen plaintiff standing, but he negligently failed so to look; that, without giving any notice or warning, he suddenly increased the speed of the car and caused appellee to fall, etc.

A demurrer was addressed to each paragraph, which demurrers were overruled and exceptions taken. The trial resulted in a verdict for appellee. Upon the overruling of the motion for a new trial, the cause was appealed to this court.

The first question arises on the assignment that the court erred in overruling appellant's separate demurrer to each paragraph of appellee's amended complaint. The pleadings before summarized contain much evidentiary matter, and indicate some confusion in the mind of the author as to the theory upon which he is basing his claim. It has not been necessary, since the act of 1899 (Acts 1899 p. 58, §632 Burns 1908), to negative contributory negligence in a complaint for personal injuries.

The complaint avers the relation of passenger and carrier. This being so, the obligation imposed upon the carrier is fixed by law, and the violent starting of the car in a negligent manner furnishes the basis for legal liability. This is shown by each paragraph, and each was, therefore, sufficient. Of course, if the facts pleaded establish contributory negligence, the demurrers should have

been sustained. The passenger might be guilty of such negligence in leaving or attempting to leave the car at an improper place, but nothing of that kind is shown. It is shown that she arose from her seat in order to alight as soon as the car should stop, but it does not appear that she attempted to leave the car; so that it is immaterial whether the place was one at which she might properly have alighted.

It is averred that the car was negligently operated. In view of facts known to the persons in charge of the car—one of such facts being that the appellee was standing —if they knew that she was on her feet, it was their duty not to operate it in such a manner as would likely result in her being thrown off, and this duty was not affected by the reasons that may have prompted her to assume such a position.

She was quite as much a passenger as though she had been standing for lack of a place to sit, and it cannot be adjudged as a matter of law that she was guilty of contributory negligence, merely because she was standing while the car was in motion. *Harris* v. *Pittsburgh, etc., R. Co.* (1904), 32 Ind. App. 600; *Pittsburgh, etc., R. Co.* v. *Miller* (1904), 33 Ind. App. 128; *Fort Wayne Traction Co.* v. *Hardendorf* (1905), 164 Ind. 403.

Each paragraph shows that the relationship of passenger and carrier existed, and avers that the car was negligently operated, and that the passenger was thereby thrown off and injured. The demurrer was properly overruled.

It is urged that the court erred in overruling the motion for a new trial; that it is not the duty of the motorman to be looking back into his car to see what passengers are doing, and that his failure to observe their positions cannot be made the basis of a charge of negligence. This is true, but it is likewise true that the motorman is not permitted carelessly and negligently to apply the power to

the car so as to give it a sudden jerk, to the injury of a passenger, as is alleged in this cause. The law demands of the motorman the exercise of a degree of care and vigilance corresponding with the danger which may accrue to passengers from his negligence in any given particular. A high degree of care from the carrier toward the passengers is exacted by law, and the conduct of the employes in charge of the car must correspond therewith. 3 Thompson, Negligence (2d ed.) §3475. The duty of the motorman is to know that he may safely start the car, and he cannot justify a violent application of electricity, by saying that he did not know that any passenger was in a position where he was likely to be thrown off. The jury was warranted in finding that the negligence charged was the proximate cause of the injury. *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308.

7. The verdict for $2,000 is not so excessive as to indicate that the jury acted from prejudice, partiality or corruption, and, therefore, it will not be interfered with. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438.

8. The assignment that the court erred in overruling appellant's motion for judgment on the answers to the interrogatories, notwithstanding the general verdict, is waived where appellant fails to present any argument thereon.

We find no error, and the judgment is affirmed.

## On Petition for Rehearing.

Hottel, J.—Counsel for appellant in their petition for a rehearing urge, with much earnestness, that the court failed to consider in the original opinion some questions that they deem vital and controlling. We therefore supplement that opinion with a consideration of those questions.

9. Counsel first insist that neither of the several paragraphs of complaint states sufficient facts. The only objection urged in the petition for rehearing is that said paragraphs do not allege ''that the place at which appellee

desired to alight was a usual stopping place on appellant's railway."

To sustain their contention that this is a necessary allegation in each paragraph of the complaint, counsel have cited two cases, one of which relates to an injury received by a passenger in alighting from a steam railroad, caused by there being no platform at the point where the train stopped, and said passenger was injured by stepping to the ground while the train was standing; and the other case cited was a case where the passenger was ejected from the train. So it will be seen that the theory of the complaint in each case was entirely different from the theory of the several paragraphs of complaint in the case at bar. But even if it were conceded that such an allegation were necessary in a suit like this one, if brought against a steam railroad, it would not follow that such an allegation is necessary where the suit is against an electric street railway. The manner of operating steam railroads is so different from the manner of operating electric street railways, that the rules of law obtaining in the first do not always apply to the latter. The steam railroad companies usually have a schedule time upon which they operate their trains, and have fixed places for stopping to discharge and receive passengers, so that there was reason for the application of the rule contended for by counsel in the particular cases cited; but upon electric street railways, where the manner of operating the car is, in a large measure, by signal, and the places of receiving and discharging passengers, and the stopping and starting of the car for such purposes, all depend, to a great extent, on the signal, the reason for the rule ceases; and, this being true, the rule itself ceases.

The complaint alleges that a signal to stop was given, and that in obedience thereto the motorman slackened the speed of the car, and almost or quite stopped it, and that appellee, believing that the car would be stopped for the

discharge of passengers at that point, got up, preparatory to alighting from said car. For the purposes of a suit against an electric street railway company, this allegation was the equivalent of the allegation contended for by counsel, which, in the cases cited, applies to steam railroads, and we think made the several paragraphs of complaint entirely sufficient in this regard. *Anderson* v. *Citizens St. R. Co.* (1895), 12 Ind. App. 194.

The one question, however, which counsel in their brief on petition for rehearing most strongly emphasize and urge, is one relating to "the proximate cause of the injury," as disclosed by the evidence. They insist in their brief that the uncontradicted evidence shows "that the signal was given to the motorman to stop the car; that the plaintiff arose to her feet before the car had stopped, for the purpose of alighting, and that a passenger on the car—a stranger to the company—gave the signal to go ahead; that thereupon, in obedience to the signal, the motorman applied the power, and that the starting of the car caused the plaintiff to fall, from which fall she received the injury complained of." Counsel then add: "It seems to us that the giving of the signal to go ahead was the proximate cause of the car's starting. * * * No reference whatever is made in the opinion to the fact that a stranger gave the signal to proceed. The whole gist of the case, so far as the evidence is concerned, is wrapped up in this one subject."

We cannot agree with counsel in their conclusion that, under the evidence, the whole gist of the case is, that a stranger to the company, a passenger on its car, gave the signal to go ahead. In considering the evidence we must not lose sight of the negligence charged in the complaint as the proximate cause of appellee's injury. We quote from the first paragraph of the complaint: "That said motorman, without giving any notice or warning, then and there carelessly and negligently so applied power to said car as

to cause it to move forward with a sudden jerk, by means of which jerk, and on account of said negligence of said motorman, this plaintiff was thrown from said car.''

The negligent act here charged as being the proximate cause of the injury, is that the motorman so carelessly and negligently applied the power as to cause the car to move forward with a sudden jerk. It is not only the moving forward of the car or increase of the speed that enters into and characterizes the negligence charged, but the time, manner and circumstances of the moving of the car all enter into and give character and quality to this act in determining whether it constituted negligence. So that the reason for the motorman's increasing the speed of the car is but one element entering into the question of the negligence charged, and is not the whole gist of the case, as appellant's counsel contend.

We know that as a general rule a common carrier of passengers is only liable for the negligent acts of itself and servants. It is not liable for the acts of strangers. But under the evidence in this case this rule is not necessarily controlling. The evidence on the question of signals, who gave them, when and where they were given, and how many were given, is conflicting. The conductor and other witnesses testified that the intersection of Lake and Center streets, just after the car passed the curve, where it was claimed the signals were given and the speed of the car was being decreased, was regarded as a regular stopping place. There were a number of passengers on the car, among them appellee, who desired to get off at this point. The conductor testified, in substance, that after leaving Buffalo street he had been requested by a passenger to stop the car on Lake street, and that, pursuant to that request, midway between Buffalo and Lake streets, he gave the motorman the signal to stop the car at said Lake street; that he noticed when he got around the curve that the motorman was not going to stop, and that he (the conductor) was about to give him another signal to stop, but saw a passenger—Jack Shoup—

get up and pull the bell once, which was the signal to stop, and that he did not again give the signal himself, as he thought the one given by Shoup would be sufficient; that the speed of the car was slackened, and he thought it was going to stop, when he saw another passenger—Mr. Gray—give the bell two rings, which was the "go-ahead" signal; that the car then increased its speed, and about this time plaintiff was thrown off; that he (the conductor) gave the bell three rings, which he says was the emergency signal, and meant "Stop the car at once."

Witness Gray testified that after the car turned south on Lake street, and when it reached the usual stopping place, he said to the conductor: "Aren't you going to stop?" and that the conductor then rang the bell, which signaled the motorman to stop, and that the car then began to decrease in speed, but not enough to suit Gray, and he said to the conductor: "Why don't you stop?" and he (Gray) then "jumped to pull the rope, and pulled it three or four times, * * * hard and fast."

The witness Shoup testified to giving the stop signal. Other witnesses testified to hearing some of these signals, but we have quoted enough of the evidence to indicate that it was conflicting, and showed a conflict and confusion of signals, and an effort on the part of the conductor, and passengers as well, to stop in the first instance.

There was evidence also showing that the partition in the front of the car, between the passengers and the motorman, was made of glass, except about three feet of the lower part; that the motorman by looking back could see the passengers in the car; that when the speed of the car decreased, appellee got up, preparatory to alighting; that the car then increased its speed, started suddenly with a jerk, and threw appellee off.

It seems to us that this statement of the evidence is sufficient to show clearly that the question of negligence in

this case did not depend wholly on the question whether the signal to start the car, after its speed had been decreased, was given by a stranger, and that even if it did the question was one of fact to be determined by the jury, and not one of law to be determined by the court. The conductor admits that he gave one of the signals to stop the car, and witness Gray testified that the conductor gave the stop signal immediately before the car's speed slackened. The car's speed did slacken to make the stop, and the jury, under the evidence, had a right to infer that the "go-ahead" signal was never given by any one after the speed of the car slackened, because the conductor says that the passenger Gray gave the "go-ahead" signal of two bells, while Gray says that he gave the bell three or four hard, fast jerks, which signal, if it meant anything, meant an emergency stop.

The jury had a right to infer, also, that the motorman's action in decreasing the speed of the car was such as to have charged him with knowledge that passengers on the car might, on account of this act, have placed themselves in a position to be injured by any sudden movement of the car. The evidence warranted the further inference by the jury that there was such a conflict or confusion of signals given that the motorman should have known that there was something wrong, and that the high degree of care, caution and prudence which the law imposes upon those operating such cars—in the matter of looking after the safety of passengers—required that the motorman, before applying the power so as suddenly to move his car, should look to see the situation of the passengers in the car.

The car was open in front, so that the motorman could see the passengers in the car, their position and situation, by looking; and while it is true, generally speaking, that 6. his duties require that his attention be directed to the front and sides of his car, yet circumstances and conditions may arise that would require him to look also at the situation in the rear. *Bessenger* v. *Metropolitan St.*

*R. Co.* (1903), 79 App. Div. 32, 79 N. Y. Supp. 1017; *Gregorio* v. *New York City R. Co.* (1906), 97 N. Y. Supp. 373, 49 Misc. Rep. 249.

The real question, under the issues tendered by the complaint, was, Did appellant, by and through its agents in charge of its car at the time plaintiff was injured, in the operation of said car, exercise the high degree of care, caution and prudence that the law imposes in such cases, or did said agents carelessly and negligently apply the power, and cause the car to start with a jerk at a time when plaintiff was standing, preparatory to getting off the car, and thereby cause her injury, as charged in her complaint? In the determination of this question the jury was not bound to consider only, and be controlled entirely by, the one question of whether a stranger gave the motorman the signal to go ahead; but such question was to be determined from all the facts and circumstances of the case developed by the proof, and, under the proof before indicated, the law does not permit us to disturb the conclusion reached by the jury.

It is only necessary that "the evidence affirmatively establish circumstances from which the inference fairly arises that the accident resulted from the want of some precaution which the defendant ought to have taken." *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 421, 2 Am. St. 193. See, also, *Louisville, etc., R. Co.* v. *Schmidt* (1893), 134 Ind. 16.

The case at bar is entirely different from the case of *Claypool* v. *Wigmore* (1904), 34 Ind. App. 35, relied on by counsel. That is a case where a separate, intervening, responsible agent cut off the line of causation from the original negligence, and this agency, together with the negligence of the injured party, was the sole, proximate cause of the injury. Neither is the case of *Sirk* v. *Marion St. R. Co.* (1895), 11 Ind. App. 680, relied on by counsel, directly in point. In that case there was a special verdict, and

the court in discussing it uses the following language: "So far as appears from the verdict, appellant in no other way informed the appellee of her desire to leave the car at Twenty-sixth street than by the signal given by herself to the motorman, in pursuance of which he slowed up and came to almost a stop, when she gave another signal, intended by her, indeed, as a stopping signal, but which may well have been the regular signal to start up the car. If it was, there was no negligence in the motorman's obeying it, unless he knew, or, by the exercise of due care, might have known that appellant was not yet off, but was in a position of danger should he start up the car. Nothing of this kind is found."

The language just quoted immediately precedes the language quoted by counsel in their brief for rehearing. There the special verdict failed to show that the motorman "knew, or by the exercise of due care might have known, that appellant was not yet off, but was in a position of danger should he start the car."

In the case at bar there was a general verdict, and every inference fairly deducible from the evidence is presumed in its favor. There was some evidence from which the jury might have inferred the very facts before quoted, which the jury in the case of *Sirk v. Marion St. R. Co., supra,* failed to find in the special verdict.

Counsel also contend that the court erred in refusing to give certain instructions tendered by appellant. These instructions refused, and argued by appellant in its brief for rehearing, were based on the theory that if the signals given to the motorman to stop and to start the car were given by strangers, and the motorman acted upon them, and increased the speed of the car without knowing that appellee was standing and that appellee was thereby injured, there could be no recovery, thereby precluding the possibility of a recovery on account of the negligent manner of increasing the speed of the car

with such suddenness as to throw a standing passenger from the car, and leaving out of account also the consideration by the jury of all other circumstances that might tend to prove negligence on the part of the conductor or motorman in connection with the starting of the car, or that might show a lack of that high degree of care, caution and prudence on their part which the law imposes in such cases. *Crump* v. *Davis* (1904), 33 Ind. App. 88; *Louisville, etc., R. Co.* v. *Snyder* (1889), 117 Ind. 435, 3 L. R. A: 434, 10 Am. St. 60; *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74.

For the reasons before expressed in discussing this same question in considering the evidence, and in view of the authorities heretofore cited, we think the court committed no error in refusing these instructions.

Counsel also object to instruction seven, given by the court at the request of appellant. This instruction states the law in accord with our views of this case, as before expressed.

Counsel next insist that in the original opinion the motion for judgment on the answers to interrogatories was treated as waived by appellant, when, in fact, it was not. It is only when the answers to special interrogatories are in irreconcilable conflict with the general verdict that they prevail against it. *Farmers Mut. Fire Ins. Co.* v. *Jackman* (1905), 35 Ind. App. 1; *Wabash R. Co.* v. *Keister* (1904), 163 Ind. 609; *City of Mishawaka* v. *Kirby* (1904), 32 Ind. App. 233.

We have examined the answers to interrogatories with care, and find no such irreconcilable conflict between them and the general verdict. We have tried to consider with care the questions presented by counsel in their petition for rehearing, and find no ground in the petition that warrants the granting of said petition.

Petition for rehearing overruled.